IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN BURNSIDE, # Y-15904, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-cv-954-SMY |
| ) | |
| WARDEN MUELLER, ) | |
| ASSISTANT WARDEN KINK, ) | |
| WARDEN STOCK, ) | |
| and LT. JOHNSON, ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

This matter comes before the Court on Plaintiff Brian Burnside's Motion for Leave to Proceed *in forma pauperis* ("IFP") (Doc. 2). Plaintiff is a former inmate, who brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that several officials at Centralia Correctional Center ("Centralia") violated his constitutional rights during his incarceration.

Under 28 U.S.C. § 1915(a)(1), a federal district court may allow a civil case to proceed without prepayment of fees, if the movant "submits an affidavit that includes a statement of all assets [he] possesses [showing] that the person is unable to pay such fees or give security therefor." Plaintiff has done so in the instant case. But the Court's inquiry does not end there, because 28 U.S.C. § 1915(e)(2) requires careful threshold scrutiny of the Complaint filed by an IFP plaintiff.

A court can deny a qualified plaintiff leave to file IFP or can dismiss a case if the action is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B). The test for determining if an action is

1

frivolous or without merit is whether the plaintiff can make a rational argument on the law or facts in support of the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir. 1983). An action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When assessing a motion to proceed IFP, a district court should inquire into the merits of the plaintiff's claims, and if the court finds that the case lacks merit under the criteria listed in § 1915(e)(2)(B), it should deny leave to proceed IFP. *Lucien v. Roegner*, 682 F.2d 625, 626 (7th Cir. 1982).

## **The Complaint**

Plaintiff asserts that Defendants retaliated against him for asserting his First Amendment right to protest by engaging in a hunger strike between October 18, 2017 and November 7, 2017. (Doc. 1, p. 5). He also claims that his Eighth Amendment rights were violated. *Id.* Plaintiff went on a hunger strike on October 18, 2017, and as a result, was placed in segregation from that date, until his release from prison on November 7, 2017. He alleges he had not violated any institutional rule, and was not charged with any disciplinary infraction before or during the time he was held in segregation. *Id.*

Plaintiff spoke with the Chief Warden (the Court presumes this is a reference to Defendant Mueller, Doc. 1, p. 2), the Assistant Warden of Operations (presumably Kink), and the "#3 Warden" (Stock) on several occasions while he was confined in segregation. (Doc. 1, pp. 2, 5). None of these defendants gave him any explanation for why he was being punished with the segregation placement. Plaintiff also talked to Lt. Johnson (the head of Internal Affairs), who said only that "the warden wanted [Plaintiff] gone but [Plaintiff] was holding on to stay by going on hunger strike." (Doc. 1, p. 5).

Plaintiff wrote an emergency grievance to Mueller, which was returned to him with a statement that Mueller was fully aware of his situation. Plaintiff attaches a grievance he marked as an emergency, dated October 30, 2017 (Doc. 1, pp. 9-10), in which he states that he was put "on investigation status" on October 24, 2017, while he was in Health Care on a hunger strike. He was then moved to segregation, still on investigation status, on October 27, when he "came off" a hunger strike. (Doc. 1, p. 9). Plaintiff complained that he had been in segregation for 4 days (since October 27), but had not been questioned by Internal Affairs or given a ticket. (Doc. 1, p. 10). All officials that Plaintiff questioned about his segregation placement, including 2 wardens (Kink and Stock), told Plaintiff they had no idea why he was in segregation. *Id.* Plaintiff stated he planned to continue his hunger strike until he was released from segregation, to protest the wrongful treatment. *Id.*

A second grievance was returned to Plaintiff with no relief granted. (Doc. 1, p. 5). This grievance, dated November 1, 2017, is also attached and repeats Plaintiff's assertion that he had not done anything to pose a threat to the safety and security of the prison or himself. (Doc. 1, pp. 7-8). He noted that he had only been in general population for less than a day after returning to Centralia on October 23, 2017. (Doc. 1, p. 8). He went on hunger strike and was put under investigation the next morning. *Id.* Plaintiff also claims in that grievance that Kink stated "it was his doing" to put Plaintiff in segregation. *Id.* Further, Mueller told Plaintiff that "he held the keys" on whether Plaintiff would go to segregation from Health Care. *Id.* These remarks led Plaintiff to conclude that these defendants were "punishing [him] for going on several hunger strikes." *Id.* This grievance contains a counselor's written response stating that "Per IA/Intel – Offender was placed on investigative status for safety and security of the institution." (Doc. 1, p. 7).

3

Plaintiff demands a jury trial, but does not say what relief he is seeking from the Court. (Doc. 1, p. 6).

**Discussion**

For the convenience of the Court, Plaintiff's claims shall be designated as follows:

**Count 1:** First Amendment claim against all Defendants, for retaliating against Plaintiff for going on a hunger strike, by placing him in "investigative status" segregation from October 27 to November 7, 2017;

**Count 2:** Eighth Amendment claim against all Defendants, for inflicting cruel and unusual punishment on Plaintiff by placing him in "investigative status" segregation from October 27 to November 7, 2017.

**Count 1** above survives review under § 1915(e)(2)(B), and will proceed for further consideration. However, **Count 2** will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a constitutional claim upon which relief may be granted.

**Count 1 – Retaliation**

Prison officials may place an inmate in administrative segregation, including investigative confinement or involuntary protective custody, without implicating a constitutionally protected liberty interest. *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996); *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). Although placement in administrative segregation may subject the inmate to more burdensome conditions, those conditions are "within the normal limits or range of custody which the conviction has authorized the [government] to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer of inmates to prison with more burdensome conditions of confinement not a violation of due process); *see also Sandin v. Conner*, 515 U.S. 472, 477 (1995).

However, if an inmate is placed in administrative segregation as a form of retaliation for protected activity, that scenario may support a First Amendment retaliation claim. "[P]lacement

4

in administrative detention for periods much shorter than three years satisfies the burden to prove an adverse action likely to deter future First Amendment activity[.]" *McKinley v. Schoenbeck*, No. 17-1709, 2018 WL 1830942, at *3 (7th Cir. Apr. 17, 2018) (unpublished) (citing *Babcock v. White*, 102 F.3d 267, 270, 275 (7th Cir. 1996)) (plaintiff should have been allowed to proceed on his claim that he was placed in administrative segregation as retaliation for refusing to "cooperate" with investigators who believed he could identify gang members; plaintiff maintained he had no knowledge about gang activity).

Prison officials may not retaliate against an inmate for exercising a constitutionally protected right. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009); *see also Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper."). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Id.*

In Plaintiff's case, the action of placing and holding him in administrative segregation may have been properly taken for safety and security reasons. Prison officials may have legitimate non-retaliatory reasons to hold a hunger-striking inmate under a form of segregation that allows for heightened monitoring. *See, e.g.*, *Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006) (prison officials have a right and a duty to force hunger-striking inmate to take nourishment if he is at risk of serious injury or death). But the question of whether or not Plaintiff's placement in segregation was retaliatory in nature cannot be resolved at the pleading stage of this case. Accordingly, the retaliation claim in **Count 1** survives review under

5

§ 1915(e)(2)(B).

**Dismissal of Count 2 – Eighth Amendment**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

While the conditions Plaintiff faced while in segregation were no doubt more restrictive than he would have experienced in general population, nothing in the Complaint suggests that the environment there deprived him of any basic human needs, or created an excessive risk to Plaintiff's health or safety. He therefore fails to state an Eighth Amendment claim upon which

relief may be granted in **Count 2**.

## Pending Motion

Plaintiff's sworn IFP motion establishes that he is indigent for purposes of IFP review. As Count 1 states a cognizable constitutional claim and the named defendants are not immune from relief, Plaintiff's Motion for Leave to Proceed IFP (Doc. 2) is **GRANTED**. Plaintiff will be allowed to proceed in the action without payment of any fees. *See* 28 U.S.C. § 1915(a)(1). Because Plaintiff was not a prisoner at the time he brought this suit, the installment payment requirement of § 1915(b) does not apply to him.

## Disposition

**COUNT 2** of the action is **DISMISSED** without prejudice for failure to state a constitutional claim upon which relief may be granted.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **MUELLER, KINK, STOCK,** and **JOHNSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 25, 2018**

s/ Staci M. Yandle
United States District Judge