IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN BURNSIDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  18-cv-954-RJD |
| ) | |
| WARDEN MUELLER, ASSISTANT ) | |
| WARDEN KINK, WARDEN STOCK, and ) | |
| LT. JOHNSON, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Brian Burnside brings this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Centralia Correctional Center ("Centralia"). In his complaint, Plaintiff alleges he engaged in a hunger strike between October 18, 2017 and November 7, 2017. Plaintiff further alleges he was placed in segregation as a result of engaging in a hunger strike. Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he was allowed to proceed on the following claim:

> Count One:   First Amendment claim against Defendants Mueller, Kink, Stock, and Johnson for retaliating against Plaintiff for going on a hunger strike, by placing him in "investigative status" segregation from October 27 to November 7, 2017.

Defendants filed a motion for summary judgment on November 22, 2019 (Doc. 31). Plaintiff filed a response (erroneously captioned as a motion for summary judgment) on January 6, 2020 (Doc. 36). For the reasons set forth below, Defendants' Motion is **GRANTED**.

**Factual Background**

Plaintiff, while incarcerated at Centralia Correctional Center, declared a hunger strike on

October 18, 2017 (Deposition of Brian Burnside, Doc. 32-1 at 14). Plaintiff testified he initiated his hunger strike because Defendant Warden Mueller had previously told Plaintiff he would reinstate thirty days of good conduct credit he lost due to a disciplinary ticket issued in June or July 2017 if Plaintiff did not receive any other tickets for thirty days (*Id.* at 14-16). Plaintiff testified he did not receive any other tickets for any infractions for sixty days, but Defendant Mueller failed to reinstate his good conduct credit (*Id.* at 15). After declaring his hunger strike on October 18, 2017, Plaintiff was housed in a crisis watch cell in the healthcare unit until October 21, 2017, when he ended his strike (*Id.* at 21). Plaintiff ended this strike after he was told by Defendant Assistant Warden Kink that Defendant Mueller would come speak to Plaintiff (*Id.* at 21-22). Defendant Mueller did not come speak with Plaintiff, and he declared a second hunger strike on October 24, 2017 (*Id.* at 17). Plaintiff accepted food and ended his second hunger strike on October 27, 2017 (*Id.* at 18).

On October 27, 2017, Plaintiff was placed in segregation (*Id.* at 22). Plaintiff testified he was moved to segregation in retaliation for asserting his right to protest and going on a hunger strike (*Id.* at 23). Plaintiff testified Warden Kink told Plaintiff it was Kink's decision to move him to segregation and that it was his prison, not Plaintiff's prison (*Id.*). Plaintiff also testified Defendant Warden Mueller told him he "holds the keys to seg" and Plaintiff was becoming "a pain in his ass by hunger striking" (*Id.*). Subsequently, on October 29, 2017, while in segregation, Plaintiff declared his third hunger strike (*Id.* at 18). Plaintiff accepted food and ended his third hunger strike on October 31, 2017 (*Id.* at 18-19).

Throughout this time, Plaintiff spoke to Defendants Mueller, Kink, and Stock on several occasions between his hunger strikes (*Id.* at 47). Plaintiff spoke to Defendant Mueller in particular about the status of their agreement regarding the reinstatement of good conduct credit

(*Id.* at 25). On October 30, 2017, Plaintiff spoke to the internal affairs lieutenant, whom Plaintiff named as Defendant Lieutenant Johnson in this case (*Id.* at 13-14, 26-27). Lieutenant Christopher Johnson attests he was not employed as the internal affairs lieutenant at Centralia in October 2017, and he was not involved in the placement of Plaintiff in segregation (Doc. 32-16 at ¶¶ 3, 5). At his deposition, Plaintiff testified he was not sure if Lt. Johnson is the correct defendant, and reiterated he intended to sue the internal affairs lieutenant (Doc. 32-1 at 13-14). In any event, Plaintiff testified he asked the internal affairs lieutenant how Plaintiff could be under investigation when he had been isolated in the health care unit since October 18, 2017 (*Id.* at 27). The internal affairs lieutenant told Plaintiff that the "warden is trying to push you out the door to go home and it's like you're holding on to stay" (*Id.*).

In their statement of undisputed facts, Defendants assert Plaintiff was placed on investigative status and placed in a segregation cell for his safety and security and the safety and security of the facility because internal affairs received information that Plaintiff was "plotting against the Wardens" (Doc. 32, Undisputed Material Facts at ¶ 10). In support of this statement, Defendants rely on two incident reports that indicated Plaintiff was plotting against the wardens if he lost good time for calling Centralia from another institution (*see* Docs. 32-7 and 32-8). Defendants, however, failed to submit an affidavit or other document to properly authenticate the incident reports. *Szymankiewicz v. Doying*, 187 F. App'x 618, 622 (7th Cir. 2006) (citations omitted) ("To be admissible, documents must be authenticated by an affiant through whom the exhibits could be admitted into evidence."). As such, the Court will not consider these incident reports.

Plaintiff was paroled on November 7, 2017 (Doc. 32-1 at 33).

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### Discussion

Plaintiff is proceeding in this action on a First Amendment retaliation claim against Defendants Warden Mueller, Assistant Warden Kink, Assistant Warden of Programs Stock, and Lt. Johnson by allegedly placing him in "investigative status" segregation from October 27 to November 7, 2017 due to Plaintiff's declaration of hunger strikes.

A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation

claim, he must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence that his speech was at least a "motivating" factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence and show that the harm would have occurred anyway, despite the protected activity. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

As a preliminary matter, the Court addresses Defendant Lt. Johnson's argument that he was not personally involved in any deprivation of Plaintiff's rights and, therefore, is entitled to summary judgment. Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Defendant Johnson explains Plaintiff named him as a defendant because Plaintiff believed he was the internal affairs lieutenant involved in placing

him in segregation. Defendant Johnson correctly asserts that Plaintiff testified he is uncertain if Christopher Johnson is the name of the internal affairs lieutenant. Defendant Johnson attests that he was not employed as the internal affairs lieutenant in October 2017 and had no involvement in the placement of Plaintiff in segregation. In his response to Defendants' motion, Plaintiff asserts the identity of the internal affairs officer has been concealed on purpose because he was told Christopher Johnson was the name of the internal affairs lieutenant. Plaintiff, however, provides no evidence to substantiate his claims or demonstrate that Defendants actively misrepresented or failed to provide information to conceal the identity of the internal affairs lieutenant at Centralia in October 2017. Indeed, Plaintiff's initial complaint named and identified Lt. Johnson as a defendant in this matter, removing any doubt that Defendants acted nefariously in concealing the identity of the proper defendant. Based on the evidence in the record, Christopher Johnson was not personally involved in the alleged constitutional deprivation and summary judgment in his favor is warranted.

Defendants Mueller, Stock, and Kink assert they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Plaintiff did not suffer a deprivation likely to deter First Amendment activity. Defendants also argue Plaintiff would have been placed in segregation regardless of his protected activity.

Defendants assert Plaintiff's eleven-day placement on investigative status in segregation was not a deprivation likely to deter First Amendment activity. In determining whether a deprivation is likely to deter First Amendment activity, the standard is whether a person of ordinary firmness would be deterred from continuing to engage in protected conduct based on the purported retaliatory conduct. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). In making this determination, Defendants urge the Court to consider due process cases in which courts have noted

that placement on investigative status does not give rise to a liberty interest under the Fourteenth Amendment.  *See, e.g., Townsend v. Fuchs*, 522 F.3d 765 (7th Cir. 2008) ("[W]e have concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation — that is, segregation imposed for administrative, protective, or investigative purposes.") (citations omitted).   The standard for a due process claim, however, is distinct from the standard considered on a First Amendment retaliation claim, and the two standards should not be conflated.  *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) ("To succeed on his retaliation claim, [Babcock] need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities.") (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (emphasis in original)).  *See also Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")).

      Although the Court declines to accept Defendants' argument that the due process line of cases should inform the undersigned's decision on Plaintiff's First Amendment claim, it is nonetheless inclined to agree with Defendants that Plaintiff did not experience a deprivation likely to deter First Amendment activity in the future.  Plaintiff was placed in segregation on investigative status for a brief period — approximately eleven days.  There is no evidence concerning the conditions in his cell while in segregation.  Plaintiff has also not set forth any evidence concerning whether his privileges were restricted, whether he was allowed to shower, attend religious services, or access property.  Simply put, there is not enough evidence for a

reasonable jury to find that Plaintiff's placement in segregation for an abbreviated period of time would likely deter a person of ordinary firmness from engaging in protected activity.  *See, e.g., Pendegraft v. Butalid*, Case No. 3:15-cv-816-NJR-DGW, 2018 WL 1565613, at *14 (S.D. Ill. Mar. 30, 2018) (finding the plaintiff's placement in segregation for a week and a half without any evidence as to the conditions in segregation insufficient to demonstrate a deprivation likely to deter a person of ordinary firmness from engaging in protected activity).  *But see McKinley v. Schoenbeck*, 731 F. App'x 511 (7th Cir. 2018) (finding the plaintiff's placement in administrative detention for over three years in a cell without heat or hot water and littered with rodent feces and dust satisfied the burden to prove an adverse action likely to deter future First Amendment activity); *Cullum v. Godinez*, No. 3:14-cv-00012-SMY-PMF, 2016 WL 304865, at *1 (S.D. Ill. Jan. 25, 2016) (explaining that a jury could find that the plaintiff had suffered a deprivation likely to deter future protected activity where he spent thirty days in segregation unit, lost gym and yard privileges for thirty days, lost access to commissary privileges for thirty days, had his security level demoted, and lost some personal items).

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Johnson, Kink, Mueller, and Stock (Doc. 31) is **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.**

**DATED: July 9, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**